### John W. Mitchell & others *vs.* Andrew H. Green & others.

The court has no jurisdiction in equity of a suit for the redemption of land sold for payment of taxes.

The court, having no distinct equity power in the matter of frauds, cannot, for the sake of aiding parties injured by fraud, convert the fraud into a trust, and thus support a bill in equity for relief.

When a bill in equity seeks relief which the court has no power to grant, and also seeks a discovery, the defendant may demur to the whole bill, if it do not aver that a suit at law is pending, or is about to be brought, in which a discovery may be material.

This was a bill in equity, in which the plaintiffs made the following allegations :  That they, on and before the 1st of May 1840, were seized in fee and in common of a farm in Worcester, of about 200 acres, of which William E. Green, one of the defendants, then was and still is tenant at will, paying no rent therefor, besides the taxes thereon, which he paid up to 1840 :  That the assessors of Worcester, in that year, assessed a tax, on said farm, to said William E., and committed the tax list to a collector duly qualified, to whom said William E. paid a part only of said tax :  That said collector afterwards, on the 15th of June 1842, advertised for sale, on the 9th of July following, so much of said farm as

9 *

would be sufficient to discharge the balance of said tax, and all necessary charges : That said William E. had notice of said advertisement, before said 9th of July, but, wrongfully conspiring with Isaac Davis to defraud the plaintiffs, neglected to pay the balance of said tax, and suffered the whole of said farm to be sold by said collector ; and that the whole thereof was sold by him, at public auction, for said balance and charges, to said Davis, for the sum of $17·43 ; and said collector afterwards, in pursuance of said sale, made a deed, conveying said farm to said Davis, subject to the right of the owners, or their heirs or assigns, to redeem the same within two years from the day of said sale : That the plaintiffs, before and at the time of said sale, were and still are resident in the city of New York, and are nearly related to said William E. Green, and to Andrew H. Green, another of the defendants; and that from the time of said sale to the 20th of June 1844, there was regular and frequent intercourse between the plaintiffs and said William E. and Andrew H. ; yet neither of said defendants, though they knew of said sale and of the plaintiffs' interest in said farm, and that the plaintiffs were ignorant of said sale, ever made known to the plaintiffs, or to any of them, that said sale had been made, but intentionally, and for the purpose of preventing the plaintiffs from redeeming said farm, and of causing them to lose the redemption thereof, kept said sale secret from them : That about the 20th of June 1844 the plaintiffs, for the first time, casually learned that said sale had been made to said Davis; that they ascertained that no deed from said Davis, conveying said farm to any other person, was on record in the registry of deeds, and on the 3d of July 1844, within two years from the day of said sale, tendered to said Davis $21·50, that being the sum paid by him, as aforesaid, for said farm, with ten per cent. interest thereon, and all necessary intervening charges, and offered to pay to him any other and further intervening charges, if they could be informed of any, and what they were, and demanded of him that he should release and discharge all his right and interest in said farm under said sale ; yet the

said Davis refused to receive said money, to give such release and discharge, or to give information of any other or further necessary intervening charges, but informed the plaintiffs that he had conveyed all his right and interest in said farm to the said Andrew H. Green : That the plaintiffs afterwards, on the 4th of July 1844, in the city of New York, where said Andrew H. then resided, presented to him a deed properly prepared for the discharge and relinquishment of all the interest which he might have acquired in said farm, under said sale and any conveyance which might have been made to him by said Davis, and requested said Andrew H. to execute said deed ; and at the same time offered to pay to him the amount of money bid and paid by said Davis as aforesaid, with ten per cent. interest thereon and all necessary intervening charges ; but that said Andrew H. then and there refused to execute said deed, alleging that he could not execute it until he had consulted counsel on the subject, and went from the plaintiffs, under pretence of consulting counsel, promising to see the plaintiffs again on the evening of the same day, but immediately either secreted himself and continued so secreted, or secretly left and continued out of said city, until after the 9th day of said July, without giving notice to any person where he was going or where he could be found, with the intent to deprive the plaintiffs of any opportunity of making a tender to him, or of learning from him the amount of such intervening charges : That the plaintiffs, with sufficient money in hand, ready to tender and pay to said Andrew H. the sum aforesaid, with interest and charges as aforesaid, made diligent and extensive search for him, at all places in said city where there was any reason to believe he would be found, from the time of so presenting said deed to him until said 9th day of July, for the purpose of making such tender to him, but could not find him, or learn where he was, or learn that he had any agent or attorney : That on the 5th of said July, the plaintiffs tendered, at the boarding house of said Andrew H., and also at his place of business in said city, said sum of $21·50, in full of the sum aforesaid, with ten per

cent. interest thereon, and all necessary intervening charges, and at each of said places offered to pay any other and further charges, if they could be informed of any, and what they were : That the plaintiffs also, on the 6th of said July, made a like tender and offer at Worcester, on said farm, in the presence of said William E. Green, to said William E. or any other person who might be authorized to receive the money in behalf of said Andrew H. or any other person who might hold said farm under said sale : That the plaintiffs, after said 9th of July 1844, made a tender and offer, in the form above mentioned, to said Andrew H., and again presented the deed, prepared as aforesaid, for him to execute ; but he refused to execute it, and also refused to give them information of any other and further necessary intervening charges.

The bill charged that, with the wicked intent aforesaid, by conspiracy by and between said William E. and Andrew H. to defraud the plaintiffs of their interest in said farm, said sale was kept secret from the plaintiffs ; that they, on or about the 7th of March 1844, procured a deed of said farm to be made by said Davis to said Andrew H., conveying to him all said Davis's interest therein ; that they kept said deed from the registry of deeds until the 9th of July 1844, to prevent a knowledge, by the plaintiffs, of said sale ; that said Andrew H., in pursuance of said conspiracy, either secreted himself and kept himself secreted in said city, or secretly left said city, and continued away therefrom, until after said 9th of July, with the intention to prevent the plaintiffs from making a tender to him, and from ascertaining the amount of said intervening charges ; and with the further intent to obtain, to the sole use of said Andrew H., or to the joint use of said Andrew H. and William E., the whole of said farm, which is of the value of $6000 or more, for the small sum so paid therefor at said sale.

The plaintiffs, in their bill, offered to pay the sum bid and paid by said Davis for said farm, with ten per cent. interest and all necessary intervening charges, and whatever they ought to pay.

The prayer of the bill was, that said William E. Green, Andrew H. Green and Isaac Davis might be held to answer to every matter and thing therein contained ; that said Davis might be held to answer on oath ; that the court would decree that said Andrew H. release and discharge all the right, title and interest, which he holds, or claims to hold, in and to said farm, under and by virtue of said sale thereof by said collector to said Davis, and said deed of said Davis to said Andrew H. ; and that the court would grant the plaintiffs such other and further relief as equity requires.

The defendants demurred to the bill, " and to all the matters and things therein contained."

*Hartshorn,* in support of the demurrer.

*Newton & C. Allen,* for the plaintiffs.

HUBBARD, J. The plaintiffs, by their bill, seek to redeem certain real estate sold for taxes, and which the purchaser at the auction sale afterwards conveyed to the defendants. They also seek a discovery as to the facts connected with the sale, and as to an alleged fraudulent evasion, by the defendants, of a tender of the moneys due, so as to prevent a redemption within the two years given by the Rev. Sts. *c.* 8, § 32. To this bill the defendants demur.

The plaintiffs, to sustain the bill, rely on the provisions of the Rev. Sts. *c.* 73, §§ 27 – 30, for the redemption of estates taken on execution, as being sufficiently broad to include the case of lands sold for the payment of taxes. And if the case is not brought within this chapter, they then contend that it is embraced in *c.* 81, § 8, giving power to the court to hear and determine cases in equity.

The Rev. Sts. *c.* 73, §§ 24 – 29, point out the things to be done, to enable the debtor to get back his land which has been taken from him on execution, and give him a remedy, either by writ of entry or by a bill in equity. Section 30 provides for the case of an execution levied on the rents and profits of an estate for life, and directs that the same proceedings, in regard to its redemption, shall be had, as are prescribed for the redemption of other real estates. But no provision

is made in the chapter, nor any allusion to it, for the redemption of lands sold for the payment of taxes. To connect these sections with the subject, it is therefore necessary to refer to *c.* 8, which provides for the sale of lands for the payment of taxes, and for their redemption. These provisions are contained in §§ 18 – 31, and the only reference to *c.* 73 is contained in § 32, which is as follows : " The owner of real estate sold for payment of taxes, or his heirs or assigns, may, at any time within two years from the day of sale, redeem the estate sold, by paying or tendering to the purchaser, or his heirs or assigns, the sum paid by him, with ten per cent. interest and all necessary intervening charges ; and when the rents and profits shall be sold for payment of taxes, the same may be redeemed at any time within the said two years, in the manner provided in the 73d chapter for the redemption of rents and profits taken on execution." This language is precise and clear, and the provisions of the 73d chapter are strictly limited to a case where the rents and profits have been sold for taxes ; and we are clearly of opinion that they cannot be extended so as to embrace the case of lands sold for the payment of taxes, without doing violence to the words used, and to the intent of the framers of the statute The reason for the restriction is not given ; but it plainly exists, and we are therefore bound to say that no remedy in equity, for the recovery of lands sold for the payment of taxes, is given by the 8th or 73d chapter.

We are then called upon to consider whether such a bill can be sustained by virtue of any of the provisions of *c.* 81, § 8. The powers there enumerated relate to the redemption of mortgages ; to the enforcing and regulation of trusts ; to the specific performance of written contracts ; to the redelivery of goods and chattels ; to suits for contribution ; to cases where more than two parties have distinct rights or interests in difference ; to suits between co-partners, joint tenants, tenants in common, joint trustees, co-executors and co-administrators ; to cases of waste and nuisance, and to bills for discovery. But there is no provision for sustaining a bill for the redemption of land sold for the payment of taxes.

It is argued, however, that under the power to regulate and enforce trusts, the purchaser of an estate sold for the payment of taxes, or his assignee, after tender made, may be charged as the trustee of the debtor, and so may be called upon to account in equity; and it is likened to the case of a mortgagor and mortgagee. To say nothing of the improbability that a case was intended to be included by implication merely, under this branch of the powers of the court, when the same had been expressly legislated upon in previous chapters, we think it differs from that of a mortgagor and mortgagee in this, that it is not a relation created by the act of the parties; that there exists no legal estate in the one and an equitable estate in the other, for the protection of which specific and appropriate relief is provided. There is no privity between the parties by way of contract. There are no rents and profits to be accounted for in consequence of possession, and no account to be stated which needs the aid of a master. There is no legal analogy between the cases. The deed of the collector must state the sum for which the estate was sold, and the statute gives ten per cent. interest on the sum paid, and all necessary intervening charges. This last is an indefinite expression, relating perhaps to the recording of the deed and the draft of a reconveyance; but whether relating to these or not, the " necessary intervening charges " cannot be of a character to require the intervention of a bill in equity to relieve against them. When the tender is made, for the purpose of redeeming lands thus sold, with an accompanying offer to pay such charges, if the holder of the estate neglects or refuses to state them, he cannot afterwards make the non-payment of them a cause for defeating a suit brought for the recovery of the premises; and if his claim should be an extravagant one, the parties aggrieved would not be without legal remedy.

We are therefore of opinion that the statutes have not created, and did not intend to create, a trust between parties thus situated; and that the remedy of the debtor whose land has been sold for payment of taxes remains as it was under *St.* 1785, *c.* 70, § 7.

In looking at the bill, we think it sets out a case of fraud on the part of the defendants, and not a trust ; and the court, having no distinct equity power in the matter of frauds, cannot, for the sake of aiding parties apparently injured, convert frauds into trusts, and thus support a bill for relief.

We have not overlooked the fact that this is a bill for discovery as well as relief, and that it might be said that the demurrer is too broad ; but there being no averment that any suit at law is pending, or is about to be brought, in which a discovery may be material, the demurrer is proper, for that cause. Cooper Eq. Pl. 58. *Pease* v. *Pease*, 8 Met. 395. The bill is dismissed, but without prejudice to an action at law.